UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 24-CV-24469-WILLIAMS/GOODMAN

DOMINIQUE SIMON,

      Plaintiff,

v.

ROGER PIERRE,

      Defendant.

_____/

REPORT AND RECOMMENDATIONS ON
*SUA SPONTE* DISMISSAL OF PLAINTIFF'S COMPLAINT AND
RECOMMENDING CONSOLIDATION WITH LOWER-NUMBERED CASE

Dominique Simon ("Plaintiff" or "Simon") filed a *pro se* Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form) [ECF No. 3] and a Complaint [ECF No. 1 ("Complaint")]. United States District Judge Kathleen M. Williams referred "all discovery disputes and non-dispositive pretrial motions" to the Undersigned. [ECF No. 7].

For the reasons stated herein, the Undersigned respectfully **recommends** that the District Court **dismiss without prejudice** Plaintiff's Complaint [ECF No. 1] (except that the money laundering count should be dismissed with prejudice), **deny as moot without**

**prejudice to renew** (if necessary) the instant motion to proceed *in forma pauperis* [ECF No. 3], and **consolidate** this case with *Simon v. Desir*, Case No. 24-cv-24467-BB (S.D. Fla. Nov. 12, 2024) pursuant to Federal Rule of Civil Procedure 42(a).

**I.       Background**

On November 12, 2024, Plaintiff initiated two separate lawsuits: Case No. 24-cv-24467-BB against **Marie Carole Desir** ("Desir") and the instant action (Case No. 24-cv-24469-KMW) against **Roger Pierre** ("Pierre" or "Defendant"). Although Plaintiff filed these actions separately, a review of both complaints establishes that the cases stem from the same set of facts and plead the same causes of action (*i.e.*, money laundering, conspiracy, fraud; larceny by tricks, and fraudulent misrepresentation). *Compare* [ECF No. 1] *with* [ECF No. 1 in Case No. 24-cv-24467-BB]. For these reasons, and as discussed in more detail below, the Undersigned **respectfully recommends** that the Court **consolidate** the actions.

**A.       The Instant Action (24-cv-24469-KMW)**

Plaintiff's Complaint alleges that, on or about March 2011, Desir introduced him to her business partner, Pierre. [ECF No. 1, ¶ 3]. "Pierre presented himself as an honest, successful businessman who owned a [t]axi[ ]cab [c]ompany and . . . several [a]partment [b]uildings in . . . Canada" and used the proceeds from his businesses to purchase assets in the United States. *Id.* at ¶¶ 4–5 (emphasis omitted).

"Pierre complimented 'Plaintiff Simon for the outstanding work Plaintiff has [sic]

2

done" and "stated that, Do everything you can brother Simon, 'businesses in your hand. **I will pay you whatever owing to you!**'" *Id.* at ¶ 6 (emphasis added; grammar and syntax errors in original).

On or about May 2011, Pierre asked Desir "to request that[ ] Plaintiff . . . collect[ ] rents from the Tenant of Apartment #1- for deposit[ ] into [a] BB&T[ ] [b]ank [a]ccount [ending in 0997]." *Id.* at ¶ 12. Additionally, "Defendant instructed Plaintiff to [c]ollect $950.00 sent from Montreal Canada, through C.A.M. transfer,[1] for deposit[ ] into [the] BB&T[ ] [b]ank [a]ccount [ending in 0997]." *Id.* at ¶ 13 (footnote added).

"In November 2011, after all due transactions went successfully[,] . . . Desir made an affirmative offer to pay Plaintiff" and "Pierre agreed and confirmed the offers as: do it as usual brother Simon, do everything you can brother Simon, 'businesses on your hand[.]' I will pay you whatever owing for your services." *Id.* at ¶ 14 (grammar and syntax errors in original).

On that same day, Pierre sent another $950.00 money transfer. This time, he instructed Plaintiff to deposit $700.00 in the BB&T bank account ending in 0997 and $250.00 in a Chase bank account ending in 6351, belonging to Desir. *Id.* at ¶¶ 15; 73(b).

From November 2011 through 2024, Plaintiff performed the following tasks for Pierre's businesses: (1) collect cash payments from the tenants in Apartment 1; (2) convert

---

[1]  Although not explained in the Complaint, C.A.M., LLC is a money transfer company. *See* https://www.camtransfer.com. "C.A.M. transfer" likely refers to money transfers using this company.

those cash payments to personal checks; and (3) deposit those checks in the BB&T bank account ending in 0997. *Id.* at ¶ 17(1). He would also collect cash sent from Canada through C.A.M. transfer, convert the money into personal checks, and deposit those checks in the BB&T bank account ending in 0997. *Id.* at ¶ 17(2). Additionally, Plaintiff would deposit some of the money collected from the tenants or from the C.A.M transfers into Desir's bank account (the Chase bank account ending in 6351). *Id.* at ¶¶ 73(b); 74(b).

During this time, Plaintiff also performed "general maintenance and [s]ervices such as: ceiling drops, [a]ir [c]onditioning, [k]etchen [sic] [s]ink repairs, [b]athroom leak[ ] repair[s], . . . [s]eptic [t]ank maintenance, [c]leaning. trimming [t]rees, [picking up] fall[en] [t]rees . . . [and] [c]oconuts [ ] debris, and [hurricane clean up]." *Id.* at ¶ 50.

Between 2016 and 2023, Pierre did not directly communicate with Plaintiff and instead used his other business partners, Desir and Vladimir Pierre ("Vladimir"). *Id.* at ¶ 19.

In June 2019, Plaintiff became impatient and irritated by the unfulfilled promises and Pierre responded that at the end of the year, he would settle with Plaintiff and asked Plaintiff to be patient. *Id.* at ¶¶ 20–22. Plaintiff agreed to wait, in good faith. *Id.*

Beginning in 2020, Pierre would send the C.A.M. transfers using the name "Valencia Pierre" or "Valencie Pierre." *Id.* at ¶ 25. When Plaintiff questioned Pierre about this change, Pierre would not respond to his question and instead started to complain about the COVID-19 pandemic. *Id.* at ¶¶ 26–27.

4

On or about November 14, 2023, Plaintiff approached Pierre, hoping to be compensated. *Id.* at ¶ 30. On November 19, 2023, Pierre told Plaintiff "that there would be enough time to discuss the matter when Plaintiff returned from church." *Id.* at ¶ 32. But when Plaintiff returned from church that day, he learned that Pierre had left to Canada. *Id.*

On January 20, 2024, Pierre called Plaintiff and asked him to "mak[e] some adjustment on some recent transactions." *Id.* at ¶ 35. When Plaintiff refused on the ground that Pierre's business transactions lacked transparency and Plaintiff believed that the transactions violated the money laundering statutes, Pierre, Desir, and Vladimir "reacted by [r]etaliation of an extreme violence." *Id.* at ¶ 39.

Plaintiff received a death threat from Vladimir, which Plaintiff reported to the police. *Id.* at ¶¶ 40–41. Immediately thereafter, Pierre returned from Canada and "threatened physical force to remove Plaintiff from the [p]roperty." *Id.* at ¶ 42. Despite an attempt by a pastor to "calm[ ] the situation down," "Plaintiff was forced to move out [of the property] on June 30, 2024" due to the "threat of extreme violence, harassment, intimidation, and embarrassment." *Id.* at ¶ 44.

The Complaint alleges that, as a result of Pierre's conduct, Plaintiff "has suffered substantial losses and . . . substantial financial hardship [such] as: losses of times [sic] consumption, [e]xpenses incurred, used of car [sic], maintenance on the [p]roperty [sic], long standing in lines [sic] waiting outside the [b]anks during [the] pandemic crisis, and

5

other losses incurred related to [the] [b]anking transactions." *Id.* at ¶ 58. Plaintiff includes an itemized list of losses totaling $183,590.00. *Id.* at ¶ 108.

### B. Plaintiff's lawsuit against Desir (24-cv-24467-BB)

In the lawsuit filed against Desir, Plaintiff includes many of the same factual allegations made in the instant Complaint [ECF No. 1].

Plaintiff met Desir in March 2011. [ECF No. 1 in Case No. 24-cv-24467-BB, ¶ 3]. "[She] cast herself as a servant of God, an honest person, someone who Plaintiff could trust" and "preyed on Plaintiff['s] kindness and religious devotion; used manipulation to lure Plaintiff into Defendant's world, once there, Plaintiff was [d]efrauded." *Id.*

Beginning in May 2011, Desir asked Plaintiff to collect rents from tenants and deposit the monies in a Chase Bank account ending in 6351. *Id.* at ¶ 12. She also sent monthly money transfers, ranging from $900.00 to $3,000.00 for deposit into the Chase bank account ending in 6351. *Id.* at ¶ 14(e). In exchange, she agreed to "pay Plaintiff whatever [was] owing when Defendant return[ed] to Florida." *Id.* at ¶ 12.

In March 2012, Desir advised Plaintiff that she was not feeling well enough to travel and instructed Plaintiff to collect cash payments from the tenants residing at 250 N.E. 159th Street, Miami, Florida.[2] Plaintiff would then convert those payments into

---

[2] This is the same property that is the subject of the instant Complaint. *See* [ECF No. 1, ¶ 3 ("On about March 2011, Defendant Roger Pierre become acquainted with Plaintiff [ ], [t]hrough Defendant's business partner [ ] Desir. The acquaintance was for the purpose of collecting rents from tenants of one (1) bedroom Apartment located at 250 NE 159th St.[,] Miami[,] Florida 33162.")].

6

checks. *Id*. at ¶¶ 15–16. Plaintiff would write personal checks from his own bank account and deposit part of the funds in the Chase bank account ending in 6351 and another part of the funds in the BB&T bank account ending in 0997, which belonged to Pierre.

Plaintiff was also tasked with: cleaning and preparing the apartments for new tenants when an old tenant moved out; writing receipts and leases for all tenants; and performing the general maintenance of both the interior and the exterior of the property. *Id.* at 19.

Desir repeated her promise to pay Plaintiff when she returned to Florida. *Id.* at ¶ 20. Plaintiff relied on these promises and agreed to do the work. *Id.*

In April 2012, Desir called Plaintiff (on behalf of Pierre and their other business partners) to complement his work and to assign Plaintiff additional tasks in exchange for a promise of extra pay. *Id.* at ¶¶ 21–22. Desir instructed Plaintiff to pick up $950.00 sent by Pierre through a C.A.M. transfer. Plaintiff would then write personal checks and deposit $700.00 in the BB&T bank account ending in 0997 (belonging to Pierre) and $250.00 in the Chase bank account ending in 6351 (belonging to Desir).

Plaintiff performed these tasks from 2011 through 2024. *Id.* at 26.

In 2016, Desir told Plaintiff she was unable to travel to Florida due to heavy snow, and again "repeat[ed] and allege[d] the above [p]romises as a servant of God, [that] she would pay Plaintiff, when [she] returned to Florida." *Id.* at ¶ 27.

Between 2016 and 2024, Plaintiff saw Desir two times. *Id.* at ¶ 29. Despite repeat

assurances, Desir did not pay Plaintiff.

Relying on these assurances, Plaintiff took care of the property, including planting trees and trimming plants and trees. *Id.* at ¶ 33.

In December 2023, Desir told Plaintiff that he could deduct $100 from his rent as "full satisfaction" for the work he had done. *Id.* at ¶ 41. Plaintiff rejected the offer as inadequate consideration. *Id.* at ¶ 42.

Plaintiff began investigating Desir and her business partners (including Pierre and Vladimir) and concluded that the financial transactions could have violated the law. *Id.* at ¶¶ 43–45.

On January 20, 2024, Desir called Plaintiff with instructions. When Plaintiff refused to carry out the instructions, Desir, Pierre, and Vladimir "[r]etaliated[ ] with physical threat of violence." *Id.* at ¶ 49. Plaintiff filed a police report and "thereafter, [ ] Pierre arrived, threatening physical force to remove Plaintiff out of the [p]roperty." *Id.* at ¶¶ 51–52.

A pastor "was appointed as an informal mediator" to "calm[ ] the situation down." *Id.* at ¶ 53. But Plaintiff, fearing for his life, left the property on June 30, 2024, due to "extreme violence, harassment, intimidation, and embarrassment." *Id.* at ¶ 54. He was not compensated or reimbursed for the work he did. *Id.* at ¶ 55. Plaintiff seeks to recover $192,466.00 from Desir for his time and expenses and includes an itemized list. *Id.* at ¶ 119.

## II. Applicable Legal Standards

As noted above, Plaintiff has moved to proceed *in forma pauperis*. The Court has an obligation to review the complaint brought by a party seeking to proceed *in forma pauperis*. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," then the Court shall dismiss the case at any time. *Id.*

A complaint is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "Factual frivolity means 'clearly baseless' on the facts, and legal frivolity means an 'indisputably meritless' legal theory." *Shell v. Von Saal*, No. 08-61154, 2009 WL 960809, at *1–2 (S.D. Fla. Apr. 7, 2009) (quoting *Neitzke*, 490 U.S. at 327).

A litigant's history of bringing unmeritorious litigation can also be considered in assessing frivolousness. *Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001). This is because 28 U.S.C. § 1915 "'represents a balance between facilitating an indigent person's access to the courts and curbing the potentially vast number of suits by such persons, who, unlike those who must pay in order to litigate their claims, have no economic disincentives to filing frivolous or malicious suits once *in forma pauperis* status is granted.'" *Shell*, 2009 WL 960809, at *2 (quoting *Herrick v. Collins*, 914 F.2d 228, 229 (11th Cir. 1990)).

"The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and [courts] will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)." *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). In reviewing a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

To state a claim for relief, a pleading must contain: "(1) a short plain statement of the grounds for the court's jurisdiction[;] . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). Liberal construction, however, does not mean that a court may "act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

**III.   Analysis**

    **A.   Plaintiff's Complaint Should Be Dismissed (Mostly) Without Prejudice**

        **i.   Shotgun pleading**

Plaintiff's Complaint is a shotgun pleading because it incorporates each preceding paragraph into the next count. *See* [ECF No. 1, ¶¶ 69 ("Plaintiff repeats and realleges the above paragraphs as if fully set forth herein."); 81 (same); 91 (same); 99 (same)].

The Eleventh Circuit has stated that the purpose of Federal Rules of Civil Procedure 8 and 10 is to "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading." *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Complaints that violate Rule 8 or Rule 10 are termed "shotgun pleadings," and the Eleventh Circuit has consistently condemned such pleadings for more than three decades. *See Davis v. Coca-Cola Bottling Co. v. Consol*, 516 F.3d 955, 979–80 & n.54 (11th Cir. 2008) (collecting cases) (abrogated on other grounds).

There are four types of shotgun pleadings:

> **The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint**. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one

> that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321–23 (footnotes omitted; emphasis added). "The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources." *Finch v. Carnival Corp.*, No. 23-CV-21704, 2023 WL 7299780, at *4 (S.D. Fla. Nov. 6, 2023). "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Id.* (quoting *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018)).

A district court's inherent authority to control its docket includes the ability to dismiss a complaint on shotgun pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citing *Weiland*, 792 F.3d at 1320). The Eleventh Circuit has also noted that district courts should require a plaintiff to replead a shotgun complaint even when the defendant does not seek such relief. *See Hirsch v. Ensurety Ventures, LLC*, No. 19-13527, 2020 WL 1289094 at *3 (11th Cir. Mar. 18, 2020).

Because Plaintiff's Complaint is a shotgun pleading, the Undersigned **respectfully recommends** that Judge Williams **dismiss** it **without prejudice and with leave to amend**

(for the most part).

        ii.        **Money Laundering (Count 1)**

"Because the screening provisions of 28 U.S.C. § 1915(e)(2) apply to [*in forma pauperis* motions], the Court first reviews the Complaint to determine whether it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." *Emrit v. Univ. of Miami Sch. of Law, et al.*, No. 23-CV-20847, 2023 WL 2374441, at *3 (S.D. Fla. Mar. 6, 2023).

In Count 1, Plaintiff seeks to allege a claim for money laundering and cites to Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (a)(2). [ECF No. 1, ¶ 66]. "Title 18 of the United States Code is a criminal statute which provides no private cause of action." *Belle-Bey v. Adams*, No. 4:19-CV-2724 SNLJ, 2019 WL 5086967, at *2 (E.D. Mo. Oct. 10, 2019). "[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v. United States Atty. Gen.*, 832 F.2d 141, 141 (11th Cir. 1987); *see also Banks v. Graddick*, No. CIV.A. 14-0319-KD-N, 2015 WL 566931, at *1 (S.D. Ala. Feb. 11, 2015) ("[R]eferences to defendants committing criminal offenses are not appropriate in a civil action. It is only a prosecutor who may prosecute criminal offenses.").

Accordingly, because Plaintiff improperly seeks to bring a civil claim under Title 18, the Undersigned **respectfully recommends** that Judge Williams **dismiss** Count 1 *with prejudice*.

### B. Plaintiff's Motion to Proceed *in Forma Pauperis* Should Be Denied without Prejudice

Pending before this Court is Plaintiff's motion to proceed *in forma pauperis* [ECF No. 3]. The Undersigned **respectfully recommends** that Judge Williams **deny as moot** Plaintiff's motion **without prejudice and with leave to renew**, if necessary. Plaintiff should be permitted to re-file his motion to proceed *in forma pauperis*, if and when, he files an amended complaint.

[**Note:** This Report and Recommendations does *not* substantively conclude that Plaintiff, in fact, has viable factual and legal grounds to file an amended complaint. It merely recommends that Plaintiff be given the opportunity to do so *if* he can do so consistent with his obligations under Federal Rule of Civil Procedure 11.[3] If he cannot, then (obviously) he should not file an amended complaint. Resources and information related to proceeding in court without a lawyer are available on the Court's website (https://www.flsd.uscourts.gov/filing-without-attorney).].

### C. Consolidation

Under Rule 42(a), the Court can consolidate cases "involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a). But in making this determination, the Court retains complete discretion and may (or may not) consolidate all or part of any action. S*ee Young*

---

[3]   "Rule 11 of the Federal Rules of Civil Procedure applies to all papers filed in federal court, including those filed *pro se*." *Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1306 (11th Cir. 2022).

*v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) (citing 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.) (explaining that even when consolidation under Rule 42(a) may be warranted because of a common issue of law or fact, it is not required)).

In *Hendrix v. Raybestos-Manhattan, Inc.*, the Eleventh Circuit noted that:

> [Rule 42(a)] is a codification of a trial court's inherent managerial power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Air Crash Disaster at Fl[a.] Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977) (quoting *Landis v. N[.] Am[.] Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936)). We have encouraged trial judges to "make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion." *Dupont v. So[.] Pacific Co.*, 366 F.2d 193, 195 (5th Cir. 1966), *cert. denied*, 386 U.S. 958, 87 S. Ct. 1027, 18 L. Ed. 2d 106 (1967).

776 F.2d 1492, 1495 (11th Cir. 1985) (footnote omitted).

The Eleventh Circuit acknowledged that "[a] district court's decision under Rule 42(a) is purely discretionary" and further stated that:

> In exercising its discretion, the court must determine:
>
>> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)).

Here, consolidation is appropriate because both lawsuits involve the same causes of action and stem from the same factual allegations. Both actions allege the same scheme,

involve Plaintiff's maintenance of the same property, and include deposits to the same bank accounts. Although one action was filed against Pierre and the other against Desir, both Pierre and Desir are featured prominently in both complaints. Thus, consolidating both cases would conserve limited judicial resources, avoid duplicative discovery, and allow the Court to resolve the claims by motion practice or at trial without the concern of inconsistent judgments.

For these reasons, the Undersigned **respectfully recommends** that Judge Williams exercise her discretion and **consolidate** the instant case with Case No. 24-cv-24467-BB.

### D. Redaction of Bank Account Numbers

The Undersigned further notes that Plaintiff's Complaint [ECF No. 1] includes complete account numbers for bank accounts allegedly belonging to Pierre and Desir. This is a violation of Fed. R. Civ. P. 5.2, Local Rule 5.3(b)(2), and Section 6(A) of the CM/ECF Administrative Procedures.

Accordingly, the Undersigned directs the Clerk of the Court to **restrict** Plaintiff's Complaint [ECF No. 1] for violating these three rules.

Any references to personal data identifiers (including bank account numbers) in any amended complaint or subsequent filing (including exhibits) must be excluded or redacted as follows:

> Filers must exclude or redact personal information from documents filed with the Court as required by Federal Rule of Criminal Procedure 49.1 and Federal Rule of Civil Procedure 5.2. Unless specifically exempted by the rules or by court order, the personal data identifiers noted below must be

> redacted to show only the following: **Social Security number**: last four digits only; **taxpayer ID number**: last four digits only; **financial account numbers**: last four digits only; date of birth: year only; **minor's name**: initials only; **home address**: city and state only (for criminal cases only). Consult the applicable rules for complete instructions on redaction.

Section 6(A) of the CM/ECF Administrative Procedures (emphasis in original).

### IV.   Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the Complaint [ECF No. 1] be *sua sponte* **dismissed with prejudice to the extent it seeks to bring a money laundering claim** and **without prejudice** as to the remaining claims and that Plaintiff's motion to proceed *in forma pauperis* [ECF No. 3] be **denied as moot** *without prejudice to renew*, if and when an amended complaint is filed. The Undersigned also **respectfully recommends** that Judge Williams exercise her discretion and **consolidate** the instant case with Case No. 24-cv-24467-BB.

Additionally, the Undersigned directs the Clerk of the Court to **restrict** Plaintiff's Complaint [ECF No. 1] for violating Fed. R. Civ. P. 5.2, Local Rule 5.3(b)(2), and Section 6(A) of the CM/ECF Administrative Procedures. Any amended complaint (or subsequent filing) must either omit or redact personal data identifiers.

### V.   Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Kathleen M. Williams. Each party may file a response to the

other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in this Report and Recommendations and shall bar the parties from attacking on appeal any factual or legal conclusions contained in this Report and Recommendations and to which they did not object, except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); CTA11 Rule 3-1.

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on November 19, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
Counsel of Record